IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:20-cr-164 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL AARON ESTRADA, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

**INTRODUCTION**

On September 17, 2020, the government obtained a three-count indictment charging the defendant, Michael Estrada, with distribution of child pornography, on or about March 8, 2020, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1); receipt of child pornography from a date unknown but by at least January 31, 2019 to on or about December 29, 2019, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1); and possession of child pornography, on or about August 13, 2020, in violation of 18 U.S.C. § 2252A(a)(5)((B), (b)(2).  A superseding indictment was filed on December 16, 2020, adding an additional charge of production and attempted production of child pornography from a date unknown, but on or between August 26, 2019, and June 24, 2020, in violation of 18 U.S.C. § 2251(a), (e).  A notice of forfeiture was also filed, pursuant to 18 U.S.C. § 2253.  On February 9, 2021, Mr. Estrada formally accepted responsibility for his offense by pleading guilty to count four of the superseding indictment, that is, the production and attempted production of child pornography offense, and consenting to the forfeiture pursuant to a written plea agreement.  The agreement calls for dismissal of the remaining counts at the time of sentencing.  The Court accepted his guilty plea on March 3, 2021.

The presentence report drafter determined that Mr. Estrada's base offense level under the advisory sentencing guidelines is 32. (PSR ¶35).  Because the offense involved a minor between the age of twelve and sixteen, two additional levels were added. (PSR ¶36).  Because the offense involved depictions of the victim engaging in sexual acts or contact, two additional levels were added. (PSR ¶37).  Because some of those sex acts involved penetration, four additional levels were added for the offense involving sadistic or masochistic conduct. (PSR ¶38).  And because the offense involved the use of a computer, two more levels were added. (PSR ¶39).  Over the objection of both parties, based on relevant conduct noted in the factual basis of the plea agreement, the Probation Office utilized USSG § 1B1.2 to create illusory-counts of conviction for receipt and distribution of child pornography[1] (PSR ¶¶44–54), and then applied the multiple count adjustment to reach a combined offense level of 47. (PSR ¶¶55–58).  Applying the pattern enhancement under USSG § 4B1.5(b)(1) — to which neither party objects — five additional levels were added, to reach an adjusted offense level of 52.  After applying a three-level reduction of acceptance of responsibility (PSR ¶¶60–61), the total offense level becomes 43 (the ceiling of the sentencing table offense levels), at criminal history category I (PSR ¶66) and the advisory sentencing range becomes 360 months of imprisonment, the statutory maximum for the actual offense of conviction in the case. (PSR ¶¶62, 111).  Mr. Estrada argues that the Probation Office has incorrectly applied USSG § 1B1.2 to this case to create multiple illusory counts of

---

[1] In regard to the guideline applicable to the phantom counts of conviction, there is a question of whether the 5-level or 2-level distribution enhancement should apply.  Mr. Estrada maintains that this question should never be reached, because § 1B1.2 is being incorrectly applied in this case.  But he is prepared to address the issue orally at the sentencing hearing, if necessary.

Relatedly, the Probation Office's reference to USSG § 2G2.2, cmt. n.6(B)(ii) that suggests an upward departure on the illusory count based on the length of a video being over five minutes may be warranted, should likewise not be reached.  But to the extent the Court wishes to address it, Mr. Estrada is prepared to do so orally at sentencing.

conviction, acknowledges that the advisory sentencing range would remain 360 months of imprisonment even if correctly scored, but respectfully argues that a sentence below that range would be sufficient under the facts of this case and in light of his personal history and characteristics, pursuant to 18 U.S.C. § 3553(a) statutory sentencing factors.

## ARGUMENT

The selection of the Chapter 2 advisory sentencing guideline applicable to a criminal case is primarily driven by the offense of conviction. USSG §1B1.1(a)(1). Over the years, there have been a few areas where the Sentencing Commission has broadened the scope of sentencing liability beyond that of the specific facts associated with the offense of conviction, but it has done so within the specific offense characteristics of the guideline applicable to the offense of conviction. An example is the requirement in USSG § 2G2.1(d) to treat each minor exploited in a production of child pornography case as a separate offense group, and then utilize the grouping rules in chapter 3 of the guidelines to increase the adjusted offense level. But even in that scenario, the increase occurs as a "special instruction" within the guideline already selected under USSG §1B1.2 in order to reach the appropriate sentencing range applicable for that guideline.

Here, the probation office has taken the position that the factual stipulation in the agreement that admitted as "relevant conduct" that Mr. Estrada also received and distributed child pornography is "a stipulation that specifically establishes the commission of additional offenses" under USSG § 1B1.2, and from there created illusory counts of conviction associated with them.[2] But the parties believe this section requires the clearly articulated, specific intent of

---

[2] The initial move by the Probation Office to use what has been agreed to as "relevant conduct" to select the applicable guideline under USSG § 1B1.2 is immediately incorrect. A stipulation

3

the parties within the plea agreement itself, in order to select or utilize guidelines other than that associated with the offense of conviction. *See United States v. Bah*, 439 F.3d 423, 428–31 (8th Cir. 2006) (discussing the type of specificity necessary in a plea agreement stipulation to utilize § 1B1.2 to select a guideline different than that of the count of conviction). Put even more simply, a stipulation to facts that *could* be part of a factual basis to support a conviction for other offenses is not the same as *specifically establishing* the commission of additional offenses for the purpose of selecting the guideline applicable to the case.[3] The commentary to § 1B1.2 further illustrates the degree of specificity and specific intent contemplated; it describes a plea agreement to one count of robbery where the defendant further also specifically admits to having committed two other robberies; and uses another example of a plea to a conspiracy to commit

---

that something is relevant conduct to an offense is not the same as "a stipulation that *specifically establishes* the commission of additional offense(s)." USSG § 1B1.2(c). Here, the parties here only agreed to facts that could support a finding that Mr. Estrada received and distributed child pornography from the Internet, but did so under the specified umbrella of "relevant conduct" within the factual basis in a plea agreement that had already specifically delineated the factual basis and elements for a production of child pornography charge. Relevant conduct is not applied under the guidelines until section 1B1.3, and is used to help "Determine the Guideline *Range*." USSG § 1B1.3 (emphasis added). This occurs *after* the guideline applicable to the offense of conviction has been selected under § 1B1.2, and is utilized for assessing and applying specific offense characteristics within that already selected guideline section. *See United States v. Takahashi*, 205 F.3d 1161, 1167 (9th Cir. 2000) ("Relevant conduct may not be used to select a guideline under § 1B1.2. Relevant conduct may be considered only in the imposition of guidelines enhancements and adjustments, once a guideline has been selected." (cleaned up)). It is an incorrect application of the guidelines to use relevant conduct for the purpose of selecting the guideline applicable to the offense — the guidelines are applied in order, and never work backwards. *See generally* USSG § 1B1.1 (Application Instructions).

[3] For example, it is easy to contemplate a scenario where parties agree to a plea to a charge with lower statutory maximum sentence than other charges available in the case, but in doing so specifically acknowledge the commission of a more serious offense, and do so by admitting each specific element of that offense within the plea agreement and agreeing that the applicable guideline should be the guideline associated with the stipulated offense. Here, while the parties loosely admitted facts for the purposes of relevant conduct, they did not specifically admit every element of those offenses as if Mr. Estrada were pleading guilty to them.

multiple offenses, wherein the factual basis by necessity would require specifically admitting the commission of those other offenses in order to match the indictment and be legally valid and acceptable by the Court. *See* USSG § 1B1.2, cmt. n.3.  In both of these examples, a plea agreement would specifically delineate factual admissions that correspond to the elements of offenses, and the intent of the parties in the agreement would be obvious for purpose of application of §1B1.2 for sentencing purposes. *See also Braxton v. United States*, 500 U.S. 344, 347–51 (1991) (discussing conflicts within the Circuits in regard to § 1B1.2 application that led to the Commission taking up the question of specificity in plea agreement stipulations for purposes of guideline selection).

      Furthermore, additional commentary in § 1B1.2 illustrates that the specific intent of the parties in the plea agreement is necessary to utilize a plea stipulation for purposes of selecting the applicable guideline.  The commentary notes that "a factual statement or stipulation made after the plea agreement has been entered, or after any modification to the plea agreement has been made, is *not* a stipulation for purposes of [1B1.2] subsection (a)."[4] *Id*. cmt. n.1 (emphasis added). It makes no sense that *only* stipulations made in the plea agreement itself matter for purposes of selecting the applicable guideline for sentencing in the case, *unless* the guideline contemplates that the plea agreement language reflect the specific intent of the parties to do so as part of effectuating a plea bargain.  This is again also clearly supported by the note in the commentary to this section stating: "A factual statement or stipulation contained in a plea agreement (written or

---

[4] The Probation office asserts that the issue at hand falls under § 1B1.2(c), and ignores subsection (a).  But, in what is likely illustrative of how flawed the child pornography guidelines have become, the USSG § 2G2.2 guideline applied to the illusory receipt and distribution counts is actually the "more serious offense" under the guidelines, because it results in a higher offense level than does the production guideline in this case.

made orally on the record) is a stipulation for the purposes of subsection (a) only if both the defendant and the government *explicitly agree that the factual statement or stipulation is a stipulation for such purposes*." *Id*. (emphasis added). The parties did not explicitly agree that Mr. Estrada committed the crimes of receipt and distribution of child pornography as part of an unusual plea deal; the parties simply acknowledged additional facts that are relevant for the purposes of the ultimate sentencing decision. The illusory counts of conviction and related guideline application in the presentence report is incorrectly applied, and the offense level should be calculated under USSG § 2G2.1 as 42, plus five levels for the pattern enhancement under USSG § 4B1.5(b)(1), minus three levels for acceptance of responsibility, for a total offense level of 44 (43 due to Chapter 5, Part A, cmt. n.2).

      Putting aside the advisory guideline calculation issues and turning to the substantive sentencing merits of the case, this case arose after an FBI agent operating on the Live Me application determined that a user profile linked to Michael Estrada was a member of a group on the platform involved in the online sharing of child pornography image and video files. (PSR ¶¶13–14). Mr. Estrada was found to have posted a link to the group that contained 19 video files of child pornography, which led to law enforcement obtaining a search warrant for his internet capable devices. (PSR ¶¶15–16). Child pornography image and video files were located on Mr. Estrada's computers and phone, and Mr. Estrada agreed to a consensual interview with law enforcement agents. (PSR ¶¶16–20). During that interview, Mr. Estrada admitted the Live Me account belonged to him, admitted accessing child pornography files, admitted receiving child

pornography links on the application, and admitted posting a link[5] as required by the "rules" of the platform, acknowledged using the TOR application to view child pornography, and that his interest in child pornography began in college and was primarily in teenagers. (PSR ¶20). He stated: "I hate that this is something that I do, especially because I have kids of my own." *Id*.

In addition, Mr. Estrada was completely forthcoming during the interview, and volunteered that he was engaged in an online relationship with a teenaged female who had sent him pictures of her genitals over Snapchat that he had saved in his Snapchat account. (PSR ¶21). He admitted meeting her in a Snapchat group for minors between ages thirteen and seventeen, and that she had told him her age. *Id*. He admitted communicating and sexting with her over Snapchat, and that he asked her for snaps of herself engaging in sexual activity that she provided to him. (PSR ¶22). He provided his account password to law enforcement, who logged into his account, and confirmed the information about the teenaged girl and the related snaps and communications. (PSR ¶¶23–25). A subsequent interview with the teenager further verified their interactions were as Mr. Estrada had stated, confirmed her age and identity, and confirmed that he was aware of her age when he requested sexually explicit images and videos from her. (PSR ¶26).

Mr. Estrada has continued to accept responsibility for his actions as the investigation culminated with the initial and superseding indictments in this case. He entered into a plea agreement to resolve the case, and has continued to fully acknowledge his offense conduct. He has pled guilty to the offense with the highest statutory penalties, which is an offense that may

---

[5] Mr. Estrada acknowledged he knew the link he posted contained child pornography, but was not aware of the exact content of the link. (PSR ¶20). This is reflective of simply reposting a link another user had previously posted in order to be allowed to stay on the platform.

have never been detected or become provable, had not Mr. Estrada been cooperative and honest with law enforcement authorities about his behavior and provided access to his Snapchat account. The question becomes what sentence is "sufficient, but not greater than necessary" for Mr. Estrada under the factors of 18 U.S.C. § 3553(a).

The offense in this case is obviously very serious under the law, and that seriousness is reflected in the statutory penalty scheme mandated by Congress that necessitates a sentence of anywhere from fifteen to thirty years of imprisonment be imposed. The question becomes where Mr. Estrada's sentence should fall on that spectrum, given the nature and circumstances of his offense behavior, and his personal history and characteristics. Whatever sentence the Court imposes will be lengthy as mandated by the law, and will remove Mr. Estrada from society for a significant period of time. When he is released in the future, he will have to try to rebuild a life while on supervised release with the United States Probation Office, and while required to register as a sex offender wherever he resides. This, for a person who has no prior criminal history of any sort, acknowledges the seriousness of his offense, and has fully accepted responsibility for his conduct. (PSR ¶¶60–61, 64–66).

As is implicit in the discussion above about the guideline calculations in the case, under either the calculation espoused by the parties, or that of the Probation Office, the offense level in the case results in an advisory sentencing range of life imprisonment, which is capped at 360 months due the statutory maximum for the offense of conviction. *See* USSG § 5G1.1(a). This recommendation from the guidelines stems from several factors of questionable substantive value under the factual circumstances of the case. Because the teenager in the case engaged in sexual activity during some of her online interactions with Mr. Estrada, two levels were added to the guideline calculation. (PSR ¶37). However, this specific offense characteristic does not

differentiate between Mr. Estrada's conduct and that of an offender who directly engages in physical contact sexual activity with victim themselves.[6] Under Eight Circuit law, Mr. Estrada receives an additional four-level enhancement because the offense involved material portraying sadistic or masochistic conduct, despite the reality that there is nothing particularly sadistic, masochistic, or violent about the masturbatory activities the teenaged victim engaged in at Mr. Estrada's behest in this case. *See United States v. Morgan*, 842 F.3d 1070, 1076 (8th Cir. 2016) ("If an image depicts actual or attempted penetration, it is per se sadistic." (citing *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004))). Mr. Estrada then receives an additional two-level enhancement because the offense involved a computer. (PSR ¶39). Nevertheless, it is now extremely rare for this type of case to not involve using a computer, and if a case does not involve a computer, it is probably because there was some type of direct interaction between an offender and a victim that would make the production of child pornography offense much more dangerous than what transpired in this case. The guidelines assess Mr. Estrada an additional five-level increase — one of the largest in the entire sentencing guideline manual — for engaging in a pattern of activity, because he engaged with the same victim in this case more than once where sexually explicit material was produced. *See* USSG § 4B1.5(b), cmt. n.4(B)(i)–(ii). This pattern, as applied in this case, treats Mr. Estrada's offense conduct in the same manner as it would for a hands-on child sex offender that directly sexually abused a child, even an infant, with no differentiation between that type and degree of offender.

---

[6] While the production of child pornography guideline contains a four-level enhancement, that enhancement applies only where force, threats, or intoxicants are utilized against the victim. *See* USSG § 2G2.1(b)(2)(B).

Though Mr. Estrada's offense is a serious one, the advisory guidelines do not sufficiently differentiate his conduct from that of a much more abhorrent offender's conduct. His acceptance of responsibility for his conduct, that commenced at the moment he had contact with law enforcement authorities and has not wavered since, and has been rendered effectively meaningless under the advisory guideline calculation and resulting recommended sentence. The factors the guideline assesses as specific characteristics are indeed relevant to the sentencing determination, but the weight and related sentence recommendation the guidelines give them has become untethered from a rational foundation, as applied in this case. Even the guidelines as an overall system envision that a case with an offense level in excess of 43 will be "rare." *See* USSG Chapter 5, Part A, cmt. n.2. But the facts of this case are not rarely encountered at all, yet a man with no prior criminal history of any sort has a higher advisory sentencing range than does an offender convicted of first degree murder after a contested trial who fought the case every step of the way. *See* USSG § 2A1.1 (base offense level of 43 for first degree murder). The lack of precision within the guideline system, as applied to the specific facts of this case, fails to adequately differentiate between types of offenders, which risks creating not only unwarranted sentencing disparities, but also unwarranted sentencing similarities between cases like this and the most egregious sexual exploitation offenses. *See Gall v. United States*, 552 U.S. 38, 55 (2007) (observing the appropriateness of the district court considering the need to avoid unwarranted *similarities* among other defendants who were not similarly situated) (emphasis in original).

Of course, the Court can recognize and alleviate the failures of the guidelines through its application of the sentencing factors of 18 U.S.C. § 3553(a), of which consideration of Mr. Estrada's individual history and characteristics are an important part. Beyond his lack of any

prior involvement with the criminal justice system, Mr. Estrada looks to have grown up in a healthy and supportive familial environment. (PSR ¶72). He was never abused in any way, enjoyed school and learning things, and had a stable childhood. (PSR ¶¶72, 74, 82). He is an introverted person, and has struggled with social anxiety since childhood that has continued throughout his adult life. (PSR ¶¶72, 87). He had a small but close group of childhood friends, never struggled with drugs or alcohol, obtained bachelor's and master's degrees in mechanical engineering and engineering management, and got married and had children. (PSR ¶¶72, 81i)–ii), 89–90, 93).

However, Mr. Estrada's life has not been without significant trauma and tragedy, which appears to have affected his mental health as an adult, and may be contributing factors to his offense behavior. His father was diagnosed with leukemia and quickly deteriorated and died when Mr. Estrada had just reached adulthood. (PSR ¶¶74, 76). Mr. Estrada's flight was delayed, and he was unable to make it to California in time to be physically present when life support was ceased. (PSR ¶74). Not being present was traumatic for him, and his mother noted to the drafter of the presentence report that he had a difficult time coping with the situation, but never obtained any help to cope with his grief and loss, and subsequently had a suicidal ideation while in college. (PSR ¶¶74, 88). His daughter suffered from classic pantothenate kinase-associated neurodegeneration (PKAN),[7] which was not diagnosed for several years, caused significant emotional and financial hardship for his family, and culminated with her death one week prior to execution of the search warrant in this case, after which Mr. Estrada again contemplated suicide.

---

[7] PKAN is a rare disease that involves the progressive neurological degeneration of specific regions of the central nervous system. *See* National Organization for Rare Disorders (NORD), *Pantothenate Kinase-Associated Neurodegeneration* (June 3, 2021, 8:45 AM), https://rarediseases.org/rare-diseases/pantothenate-kinase-associated-neurodegeneration/.

(PSR ¶¶81i), 88, 96, 101). Even before becoming her full-time caretaker, her condition necessitated that he only work part time in retail jobs, meaning he could not utilize the engineering education and skills he spent so many years working toward. (PSR ¶¶96–101). His mental health problems have been apparent enough over the years that his family and friends were concerned for him. (PSR ¶88). Even though the Polk County Jail only recently added the major depressive disorder diagnosis to the social anxiety diagnosis, it is likely Mr. Estrada has battled depression for many years. (PSR ¶87).

Unresolved and unaddressed trauma and severe stress can manifest in unusual ways. It is not difficult to see how a depressed, socially anxious introvert going through an extremely stressful situation as the primary caretaker for a dying child might emotionally regress in some ways and/or turn to the online world as an unhealthy outlet of escapism. An initial interest in child pornography that reportedly manifested in college after the traumatic death of his father, manifested again while he was at home caring for his dying daughter and infant son. It manifested in the form of looking at online images, and via engaging in an online faux-romantic and sexting-type relationship with a teenaged girl, and has now culminated with the charges in this case. The struggles Mr. Estrada was going through do not excuse his conduct, but may provide some explanation of how he reached this point.

Mr. Estrada's honesty about what he did suggests that he is a good candidate for rehabilitation and does not need to be incapacitated for thirty years to protect society from any future criminal activity on his part. He was going through the worst moments of his life when the offense was committed in this case, but never made any efforts to meet up with the victim, was forthcoming with law enforcement to the point of providing them with exactly what they needed to charge him with the offense of conviction, and has not tried to minimize his actions to

his family and friends. He has completely taken responsibility for his actions, despite knowing the severe mandatory consequences that he faces.[8] All the facts of the case, and the facts about Mr. Estrada, suggest that the advisory guidelines recommend a sentence that is greater than necessary, and that a lower sentence is sufficient to meet the requirements of 18 U.S.C. § 3553(a).[9] *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.").

ealth in the past.

                                                Respectfully Submitted,

                                                */s/ Joseph D. Herrold*
                                                Joseph D. Herrold, Asst. Federal Defender
                                                FEDERAL PUBLIC DEFENDER'S OFFICE
                                                400 Locust Street, Suite 340
                                                Des Moines, Iowa 50309-2353
                                                PHONE: (515) 309-9610
                                                FAX: (515) 309-9625
                                                E-MAIL: joe_herrold@fd.org
                                                ATTORNEY FOR DEFENDANT

---

[8] An additional fine is unwarranted under the factors of 18 U.S.C. § 3572(a), given Mr. Estrada's divorce during this case, the length of even the minimum mandatory penalty associated with the charge, his $120 per month child support obligation that he cannot readily meet while incarcerated, and the potential assessment and restitution amounts that could be imposed.

[9] Concerning the special condition of supervision requiring periodic polygraph testing, Mr. Estrada maintains that the polygraph testing requirement needs to be more narrowly tailored and tethered to something more specific than the general terms of supervision. Historically, such conditions have been part of a sex offender treatment program, but this language is broad and generalized, and provides no clear indication of limitation on its usage. Besides having reliability concerns, polygraph testing can be utilized in an incredibly invasive manner if no limitations are placed on it. As drafted, the language in the recommended condition would allow any probationer to be subject to polygraph testing to ensure general compliance with both specific and general terms of supervision. That is a greater deprivation of liberty than is reasonably necessary to fulfill the purposes in 18 U.S.C. § 3553(a), and lacks any specific tailoring to the relevant factors.

CERTIFICATE OF SERVICE

    I hereby certify that on June 3, 2021, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

                                                       */s/ Morgan Conn*, Paralegal